# shellpoint
A DIVISION OF newrez

August 18, 2022

KEVIN C FAYETTE
1675 WHITEHORSE MERCERVILLE RD
SUITE 204
HAMILTON, NJ 08619

| CONTACT INFORMATION |
|---|
| **Correspondence:** P.O. Box 10826 Greenville, SC 29603 |
| **Return Instructions:** Please use the included envelope to send back your notarized modification packet. LMS-Notary Team Attn: QC Dept ServiceLink 3220 El Camino Real Irvine, CA 92602 |
| **Business Hours:** |
| Mon - Thurs:        8:00AM-6:00PM |
| Fri:                8:00AM-5:00PM |
| **Phone:** 866-825-2174 |
| **Fax:** 866-467-1138 |
| **Website:** www.shellpointmtg.com |
| **Email:** lossmitigation@shellpointmtg.com |

Loan Number:           0670026376
Property Address:      10 CARTLIDGE AVE
                       TRENTON, NJ  08610

Dear Homeowner(s):

The enclosed Modification Agreement ("Loan Modification Agreement") reflects the proposed terms of your modified mortgage.

**To Accept this Offer:**

**STEP 1** **COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

- ☑ **Sign and return** both original versions of the Loan Modification Agreement back to us in the enclosed, pre-paid envelope by **September 1, 2022**. If you do not send all signed original versions of the Loan Modification Agreement by the above date, you must contact us if you still wish to be considered for assistance.
  - If the Loan Modification Agreement has notary provisions at the end, you must sign both original versions before a notary public and return the notarized original versions to us.
  - We encourage you to make a copy of all documents for your records.
  - **Please Note:** we will be providing a mobile notary service to assist with executing these documents. They will be calling the phone number we have on file to set an appointment for notarizing these documents. Please ensure that all parties needed to execute these documents will be present during the notary appointment.

---

Standard Cover Letter
Proprietary W3078                                          Page 1 of 2                                          22060MU 10/19

*0670026376*

**STEP 2** CONTINUE TO MAKE YOUR PAYMENTS ON TIME

☑ **Continue to make all payments** on or before the dates they are due. If the payments are made after their due dates or in amounts different from the payment amount required, your mortgage may not be eligible for this assistance.

---

**Modified Payment Information**

**Upon completion of this modification, your new payment amount will be $1,571.37 and the first payment in this amount will be due on October 1, 2022**

---

To better understand the proposed terms of your modified mortgage, please read the attached Summary of Your Modified Mortgage and the Modification Agreement.

If you are a successor in interest, then in order to complete the Modification, we will need one of the following sets of documents — Death Certificate and Executed Will or Court Order; Recorded Instrument proving Tenancy by the Entirety or Joint-Tenancy (so long as the jurisdiction does not require a Probate Court to establish a successor); an Affidavit of Heirship and a Death Certificate (so long as the jurisdiction does not require a Probate Court to establish a successor); a Property Agreement filed incident to a divorce proceeding (so long as the jurisdiction does not require a Deed conveying the interest in the property); or Evidence of a Quit Claim Deed transferred from living spouse or parent.

Don't delay—take advantage of this great offer by **September 1, 2022**.

Sincerely,

Loss Mitigation Department
Shellpoint Mortgage Servicing

*Attachments: Summary of Your Modified Mortgage, Two copies of the Modification Agreement.*

---


*0 6 7 0 0 2 6 3 7 6 *

## SUMMARY
Here is a summary of your modified mortgage.

**UNPAID PRINCIPAL BALANCE.** At the end of the Trial Period Plan, any past due amounts including unpaid interest, real estate taxes, insurance premiums, previous deferred amounts and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. <u>In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance.</u> **If you fulfill the terms of the Trial Period Plan, including but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** If it is not adjusted, the existing interest rate on your mortgage loan will be applied to your modified loan as noted in the attached Modification Agreement.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums, and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Shellpoint will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Shellpoint must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be **$704.58**.

**ESCROW SHORTAGE** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of **$2,879.50**. You may pay this amount over a 5-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage in a lump sum now, please contact us. Paying this amount in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT TERMS.** The enclosed Modification Agreement includes a payment schedule in Section 2. showing your payment plan for the life of your modified loan after the Trial Period.

**FEES.** There are no fees or other charges for this modification.

**LOAN MODIFICATION AGREEMENT.** Please read the enclosed Loan Modification Agreement carefully and make sure that you understand the terms. If you have any questions, please contact us at 866-825-2174.

**BALLOON PAYMENT.** When your mortgage does not fully amortize over the term of the note, there is a final remaining balance that is due upon maturity.

## Agreement Checklist
### For Your Information Only - Do Not Return with Your Agreement

**GET STARTED** – use this checklist to ensure you have completed all required forms and have the right information.

| | | |
|---|---|---|
| Step 1 | ☐ | **Fully sign both originals.** EVERYONE named on the title and/or loan must sign the agreement. Check every page for needed signatures.<br>***Note:*** If anyone should not be listed on the mortgage, you must include supporting documentation, such as a Quit Claim Deed, Divorce Decree, or Death Certificate. |
| Step 2 | ☐ | **Return every page.** Return all pages of both originals, including any disclosures, fully signed. |
| Step 3 | ☐ | **Return unedited originals.** Make sure that you do not cross-out, white out, edit, or alter the agreement(s) in any way. |
| Step 4 | ☐ | **Sign and send the most recent agreement(s).** If you received multiple versions, be sure to send the one with the most recent date. |
| Step 5 | ☐ | **Notarize both originals.**<br>• Dates must match- the date signed must be the date notarized<br>• No white-outs or corrections on the agreement(s)<br>• The notary cannot also be the witness<br>• The notary name must be typed or printed below signature<br>• The notary must write "Notary Public" after his or her name<br>• The notary commission expiration date must be listed<br>• Notary seal/stamp must be legible and not overlap text or signatures |
| Step 6 | ☐ | **Gather and send completed documents in the return envelope that is provided.** |

**IMPORTANT REMINDERS:**
- ☐ If you cannot provide the documentation within the time frame provided, please contact us at 866-825-2174.
- ☐ Keep a copy of all documents and proof of mailing/e-mailing for your records.

Questions? Contact us at 866-825-2174.


*0 6 7 0 0 2 6 3 7 6 *

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is: Federal Trade Commission, Equal Credit Opportunity, 600 Pennsylvania Avenue, NW, Washington, DC 20580.

## Please read the following important notices as they may affect your rights.

NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826, Greenville, SC 29603.

Shellpoint Mortgage Servicing utilizes third-party providers in connection with the servicing of your loan, but Shellpoint Mortgage Servicing remains responsible for all actions taken by third-party providers.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

If you prefer to receive communication in a language other than English, please contact us at 866-825-2174  to speak with a translator in your preferred language about the servicing of your loan or a document you received.

Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-825-2174  para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.

**如果您要使用英语以外的其他语言进行交流，请致电 866-825-2174，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.



# shellpoint
A DIVISION OF newrez

## Life is hectic. We get it.



Hi

With automatic withdrawal (ACH), you can make payments without lifting a finger. Our **convenient, secure,** and **free** service allows you to automatically withdraw your mortgage payment every month on a date you choose.

**Set up ACH today!** Log in to your account. Select **Payments** and click **Schedule Recurring Payment**. Enter your banking information and you're all set!

**Don't have an online account? You have immediate access to features including:**

- Making payments
- Checking account status
- View, download, and print forms and statements
- Text and email notifications
- 1098 paperless statements

**You can** register today!



**Questions or Concerns? We're committed to providing you excellent service.**

Contact our Customer Care Team at **800-365-7107** Monday-Friday 8 a.m.-10 p.m. and Saturday 8 a.m.- 3 p.m. EST. Be sure to mention your loan number when you call.

**¿Hablas español?** Este correo electrónico contiene información importante sobre su hipoteca. Si no comprende este correo electrónico, llame a uno de nuestros representantes de habla hispana al **800-365-7107**.



Email from Shellpoint Mortgage Servicing helps you stay connected with your mortgage servicer. But if you prefer **not** to receive messages like this, simply <u>unsubscribe</u> and we'll remove you from this email list. If you have any questions about how we use and protect your personal information, please view our <u>*privacy policy*</u>.

Please do not respond to this email, this mailbox is not monitored. If you have questions, call our Customer Care Team at 800-365-7107.

Review our <u>*Legal Disclosures*</u>.

ATTENTION: This electronic transmission, and any documents attached hereto, may contain confidential, legally privileged, proprietary data, and/or non-public personal information as defined in the Gramm-Leach-Bliley Act (collectively, "Confidential Information"). If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited. By accepting and reviewing any confidential Information contained in this electronic transmission, you agree to maintain and protect the confidential nature of the Confidential Information in accordance with the applicable law and to ensure nondisclosure except for the limited purpose for which it is being provided and agree to indemnify us against any losses or expenses resulting from any unauthorized use or disclosure of Confidential Information.

55 Beattie Place, Suite 110 | Greenville, SC 29601
<u>Unsubscribe</u> | <u>Update Preferences</u>



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# ATTENTION NOTARY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ALL dates on signature lines and acknowledgements must **MATCH**
## Please be sure to SIGN and PRINT your name exactly as it appears on your notary stamp/seal.

Please see below for example:

### BORROWER ACKNOWLEDGEMENT

State of____{**State**}____
County of __{**County**}____

On the _{**day**}_ day of_____{**Month**}_____, in the year _{**Year**}___, before me, __{**Printed name of Notary**}___, Notary Public personally appeared ***JOHN DOE [pre-printed name of person acknowledged]***, known or identified to me (or satisfactorily proven) to be the person whos name(s) is/are subscribed to the within instrument and acknowledged that he (or they) executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_____{**Signature of Notary**}_____
Signature of Officer

{Place seal here}
DO NOT COVER ANY TEXT

_____{**Printed name of Notary**}_____
Printed Name

(Seal)

_____{print: "**Notary Public**"}_____
Title of Officer

My Commission Expires: {**Month/Day/Year**}

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Failure to do so will result in the documents being rejected by the lender and a new set of documents will have to be executed

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*NJ

Loan No. **0670026376**
Borrowers ("Borrower"): **BARRY HERBERT and JOANN HERBERT**

## LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this **18th** day of, **August, 2022**, by and between the undersigned borrower (the "Borrower") and **NewRez LLC d/b/a Shellpoint Mortgage Servicing**, (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

**1. Errors and Omissions**

("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Modification. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Modification to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument underlying the Modification and Note Holder may pursue its available remedies.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

_____   Date: 9/1/2022
Borrower   - BARRY HERBERT

_____   Date: 9/1/2022
Borrower   - JOANN HERBERT

Loan Modification Agreement Rider
W3078O                                 Page 1 of 1                         39435MU 02/20



After recording please return to:
ServiceLink
Attn: Loan Modification Solutions
3220 El Camino Real
Irvine, CA  92602

Prepared by:
Nicole L. Harwood
55 Beattie Place Suite 110 (MS 157)
Greenville, SC  29601
866-825-2174

───────────────────────[Space Above This Line For Recording Data]───────────────────────

Loan No.: 0670026376

Freddie Mac Loan No: 655665811

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this **18th** day of **August, 2022**, between **BARRY HERBERT AND JOANN HERBERT** ("Borrower" or "I") and **NewRez LLC d/b/a Shellpoint Mortgage Servicing** ("Lender"),  amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **December 22, 2010** and in the amount of **$214,707.00** and recorded on **January 20, 2011** in Book or Liber **10648**, at page(s) **0270**, Instrument No. **RD 2011 002607**  in the Official Records of **MERCER** County, **New Jersey** and (2) the Note bearing the same date as and secured by the Security Instrument, which was entered into a security for the performance of the Note and encumbers the real and personal property described and defined in the Security Instrument as the "Property," located at:

**10 CARTLIDGE AVE, TRENTON, NJ 08610**
*[Property Address]*

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the agreements made in this Agreement, and other good and valuable consideration which the parties agree they have received, including but not limited to avoiding foreclosure and its related costs, the

| Loan Modification Agreement for Delinquent Mortgages | Page 1 of 10 | Exhibit 76<br>97569NJ 09/19 |
|---|---|---|



Borrower and Lender agree to modify the terms of the Note and Security Instrument (the "Loan Documents") as set forth in the agreement. The Borrower and the Lender also agree that the provisions of this Agreement supersede and replace any inconsistent provisions set forth in the Loan Documents and any prior modification, forbearance or other loss mitigation agreement.

1. **BORROWER REPRESENTATIONS AND COVENANTS.** I certify and represent to Lender and otherwise agree and covenant with Lender that:

    a) I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient readily available financial assets to make my monthly mortgage payments now or in the near future;

    b) There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;

    c) I have provided required documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify mortgage assistance);

    d) All documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for this modification, are true and correct;

    e) I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that my mortgage loan as modified by this Agreement is in first lien position and is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

2. **ACKNOWLEDGEMENTS AND PRECONDITIONS TO MODIFICATION.** I understand and acknowledge that:

    a) If, prior to or as of the Modification Effective Date, the Lender determines that any of my certifications or representations set forth in paragraph No.1 is untrue or any covenant or agreement set forth above in paragraph No.1 has not been performed, the Loan Documents will not be modified and this Agreement, except for this paragraph No.2 is null and void and of no legal effect; and

    b) The Loan Documents will not be modified by this Agreement unless and until both (i) the Lender has accepted this Agreement as solely evidenced by Lender's signature on this Agreement or on a copy of this Agreement containing Lender's signature, and (ii) the Modification Effective Date has occurred and the Lender will not be obligated or bound to make any modification of the Loan Documents if any certification or representation set forth above in paragraph No.1 is untrue or any covenant or agreement set forth above in paragraph No.1 or 2 has not been performed.

**Loan Modification Agreement for Delinquent Mortgages**  
Page 2 of 10

Exhibit 76  
97569NJ 09/19



3.     **CAPITALIZATION AMOUNT.** I acknowledge that interest has accrued but has not been paid and the Lender also has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Loan Documents and that such interest, costs and expenses, in the total amount of **$20,166.55**, have been added to the principal balance owed under the Note and secured by the Security Instrument.

4.     **UNPAID PRINCIPAL BALANCE.** As of **October 1, 2022** the amount payable under the Loan Documents is U.S. **$196,302.20** (the "Unpaid Principal Balance"), consisting of the unpaid amount(s) loaned to Borrower by Lender plus the Capitalization Amount set forth in paragraph No.3.

5.     **BORROWER'S PROMISE TO PAY.** I promise to pay the Unpaid Principal Balance plus interest charged in accordance with paragraph No.6 to the order of Lender in accordance with the payment schedule set forth in paragraph No.7.

6.     **INTEREST.** Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.375%** beginning on **September 1, 2022**. The yearly rate of **4.375%** will remain in effect until principal and interest are paid in full.

7.     **MONTHLY PAYMENTS AND DUE DATE.** I promise to make monthly payments of principal and interest as set forth in the schedule below until the principal and interest and any other amounts secured by the Security Instrument are paid in full. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 4.375% | 09/01/2022 | $866.79 | $704.58, may adjust periodically | $1,571.37, may adjust periodically | 10/01/2022 | 480 |

**\*The monthly escrow payment amount may be adjusted periodically in accordance with applicable law and therefore I understand that my total monthly payment may change accordingly.**

8.     **MATURITY DATE.** If on **September 1, 2062** (the "Maturity Date"), I still owe amounts under the Loan Documents, as amended by this Agreement, I will pay these amounts in full on the Maturity Date.

9.     **TRANSFER OF THE PROPERTY OR BENEFICIAL INTEREST IN BORROWER.** As used in this paragraph No.9, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser or other third party

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)

without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed and, within such period, Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

10. **SECURITY INSTRUMENT.** I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Security Instrument, including without limitation, my covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No.4:

   a) all terms and provisions of the Loan Documents (if any) providing for, implementing, or relating to, adjustable, step or simple rate of interest payable under the Note; and
   b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Loan Documents and that contains any such terms and provisions as those referred to in paragraph No.10(a).

11.

12. **ADDITIONAL AGREEMENTS.** I understand and agree that:

   a) **Default.** I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement; that all the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument also apply to default in the making of the payments due under this Agreement; and that I will be in default if, during the loss mitigation application process, I or any persons or entities acting at my direction or with my knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with my mortgage loan or application for mortgage assistance, such material representations include, but are not limited to, representations concerning my income, hardship, Property, and occupancy of the Property;

   b) **Loan Documents Remain in Full Force and Effect Except as Modified.** All covenants, agreements, stipulations, and conditions in the Loan Documents shall be and remain in full force and effect, except as modified by this Agreement, and none of the Borrower's obligations or liabilities under the Loan Documents shall be diminished or released by any provisions of this Agreement, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Loan Documents, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Loan Documents are expressly reserved by Lender. The Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed;

   c) **Debt is not Satisfied or Released.** Nothing in this Agreement shall be understood or

**Loan Modification Agreement for Delinquent Mortgages**　　　　　　　　　　　　　　　　Exhibit 76
Page 4 of 10　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　97569NJ 09/19



construed to be a satisfaction or release in whole or in part of the Loan Documents;

d) **Modification Costs and Expenses of Lender.** I agree that all costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender;

e) **Assignment of Agreement.** I understand that I may not assign the Loan Documents or this Agreement to a buyer or transferee of the Property and, unless expressly agreed to by Lender in writing, such buyer or transferee will not be permitted to assume the Loan;

f) **Execution of Documents.** I agree to make and execute such other documents or papers as may be necessary or required to consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this agreement and which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, and administrators, of the Borrower or the Borrower's estate. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under any of Lender's available modification programs. Borrower represents that all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing;

g) **MERS.** Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. If my loan has been registered with MERS, I understand and agree that MERS has only legal title to the interests granted by the Borrower under the Loan Documents and this Agreement and MERS is acting solely as nominee for Lender and Lender's successors and assigns, and as such, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan;

h) **Lost or Destroyed Documents.** That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this paragraph No.12(i). shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement;

---



i) **Mortgage Insurance Premiums.** That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the Capitalization Amount which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Unpaid Principal Balance; and

j) **Consent to Disclosure of Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this paragraph No.12(k), Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan. Borrower consents to being contracted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

k) **FUNDS FOR ESCROW ITEMS.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this paragraph No.12(a) I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and,

---

**Loan Modification Agreement for Delinquent Mortgages**                                                        Exhibit 76



upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph No.12(a).

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

**In Witness Whereof, Lender and Borrower have executed this Agreement.**

_____    Date: 9/1/22
Borrower    - BARRY HERBERT

_____    Date: 9/1/2022
Borrower    - JOANN HERBERT



## ACKNOWLEDGMENT

State of New Jersey §
County of Mercer §
§

On this 1st day of September, 2022, before me Adebimpe Baderinwa-Olajide, Notary Public, personally appeared **BARRY HERBERT AND JOANN HERBERT**, known or identified to me (or satisfactorily proven), to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he (or they) executed the same as his own act for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

ADEBIMPE BADERINWA-OLAJIDE
Notary Public
State of New Jersey
My Commission Expires Sept. 9, 2022

Signature of Officer

Adebimpe Baderinwa-Olajide
Printed Name

Branch Manager
Title of Officer

(Seal)

My Commission Expires: 09/09/2022

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**NewRez LLC d/b/a Shellpoint Mortgage Servicing**

By: _____     _____
                                     -Lender         Date of Lender's Signature

## ACKNOWLEDGMENT

State of _____         §
                            §
County of _____        §
                            §

On _____, before me _____, Notary Public, personally appeared,                                    and proved to my satisfaction that himself/herself was the maker of the attached instrument and was authorized to and did execute the foregoing instrument as _____ of **NewRez LLC d/b/a Shellpoint Mortgage Servicing**, and this instrument was executed as the act of the entity.

In witness whereof I hereunto set my hand and official seal.

_____
Signature of Officer

_____
Printed Name

_____
Title of Officer

(Seal)                            My Commission Expires: _____

---

Loan Modification Agreement for Delinquent Mortgages                          Exhibit 76
                         Page 9 of 10                                        97569NJ 09/19


*0670026376*

# EXHIBIT A

CONSUMER(S): BARRY HERBERT AND JOANN HERBERT

CONTRACT NUMBER: 0670026376

LEGAL DESCRIPTION:

STATE OF NEW JERSEY, COUNTY OF MERCER, AND DESCRIBED AS FOLLOWS:

A PARCEL OF LAND LOCATED IN THE TOWNSHIP OF HAMILTON, COUNTY OF MERCER, STATE OF NEW JERSEY, AND KNOWN AS:  BEING LOT NUMBER 1 BLOCK 2564 AS SHOWN IN THE RECORDED PLAT/MAP THEREOF IN BOOK 4457 PAGE 279 OF MERCER COUNTY RECORDS. PERMANENT PARCEL NUMBER: BLOCK 2564 LOT 1 BARRY HERBERT AND JOANN HERBERT, HUSBAND AND WIFE, AS TENANTS BY THE ENTIRETY   10 CARTLIDGE AVE, TRENTON NJ 08610 LOAN REFERENCE NUMBER: 6849357/1757372758  FIRST AMERICAN ORDER NO: 43112890 IDENTIFIER:

Parcel ID Number: BLOCK 2564/LOT 1
ALSO KNOWN AS: 10 CARTLIDGE AVE, TRENTON, NJ 08610